**Dennis J. ROBERTS II,**
**Attorney General,**

v.

**NEW ENGLAND TELEPHONE AND**
**TELEGRAPH COMPANY.**

**83–511–M.P.**

Supreme Court of Rhode Island.

Feb. 1, 1985.

Dennis J. Roberts II, Atty. Gen., Carolyn Wexler, Sp. Asst. Atty. Gen., for petitioner.

Hugo L. Ricci, Jr., Providence, for R.I. Consumers Council.

Peter J. McGinn, Tillinghast, Collins & Graham, Providence, Bruce P. Beausejour, Boston, Mass., for respondent.

James K. Edwards, Providence, for R.I. Alarm Assn.

## OPINION

KELLEHER, Justice.

This is a petition for certiorari brought by the Attorney General (appellant or Attorney General) as an aggrieved person and as the representative of the public interest pursuant to G.L.1956 (1984 Reenactment) § 39–5–1 to review the report and order of the Public Utilities Commission (the commission) issued in docket No. 1698 regarding the tariff filing of January 12, 1983, of New England Telephone & Telegraph Company (NET or the company). This tariff sought to generate additional annual intrastate revenues in excess of $37 million.

Following a prehearing conference held March 25, 1983, the commission held its first public hearing on April 5, 1983, and the hearings concluded in mid-July 1983. On October 7, 1983, the commission issued its report and order authorizing NET to increase its revenues by $24,730,000. Later, this amount was amended to read $23,-330,000. This revised amount was about $4 million more than the amount recommended by the expert witness presented by the Division of Public Utilities and Carriers (DPUC). The commission, in reaching its conclusion, approved several rate-restructuring proposals advanced by the company, which proposals are now being challenged by the Attorney General. They are (1) a plan calling for a charge in certain instances for subscribers seeking information or, as the telephone industry would have it, "directory assistance"; (2) the imposition of a charge for the use of "inside wire"; (3) an increase in the charge for local calls made from public or semipublic pay telephones from ten to fifteen cents; (4) increases in the charges imposed for "measured residence service," and a variety of other services referred to by all the litigants as "other company proposals." The changes effectuated by the commission, in the Attorney General's opinion, were arbitrary and capricious. He also claims a deprivation of procedural due-process safeguards. In our opinion, the only category of services deserving of comment, having in mind the arbitrary-and-capricious charge, are directory assistance and the nickel increase in the price of a local call made from a public or semipublic pay telephone.

■ As noted in *Interstate Navigation Co. v. Burke*, R.I., 465 A.2d 750, 755 (1983), and stated many times earlier by this court, our role in reviewing the commission's findings is clearly defined by statute and case law. The commission does the factfinding; we do not. Instead, we determine whether the commission's findings are lawful and reasonable, fairly and substantially supported by legal evidence, and sufficiently specific to enable us to ascertain if the evidence upon which the commission based its findings reasonably supports the result. With these standards in mind, we now turn to the record as it relates to the charge for information.

The commission first encountered the directory-assistance-charge issue in 1978. At that time, the commission expressed its concern about deficiencies in the readability of local directories and conditioned any prospective approval of directory-assistance charging upon the upgrading of directory readability. Once sufficient improvements were made in this area, the stage was then set for consideration of such a plan in docket No. 1698.

Laura A. Cardinale, NET's district manager, Network Services Planning, testified on the directory-assistance-charge plan proposed by the company. As the plan was originally envisioned, there was to be no charge for the first five inquiries to the directory-assistance division, but thereafter the charge for each inquiry was to be fifty cents for each call placed through a local or toll operator and twenty-five cents for each customer-dialed call. The company proposed exemptions for coin-operated (pay) telephone service, disabled persons, and hotels, motels, and hospitals. Ms. Cardinale

testified that on average 45 percent of NET's Rhode Island customers make no use of the directory-assistance service in a given month. The company's records also indicate that, without a charging plan, only 28 percent of its customers made more than five calls a month to directory assistance, but significantly, this group made 90 percent of such calls. Ms. Cardinale further testified that with the company's proposed directory-assistance plan, 60 percent of NET's customers would make no calls to directory assistance and, with the five-free-call allowance in Rhode Island, less than 9 percent of NET's customers would eventually be billed for this service. The commission observed that Ms. Cardinale's study of average-monthly-customer-usage characteristics "was subject to extensive and often telling cross-examination." The company concluded, and the commission apparently agreed, that the implementation of the directory-assistance plan would reduce calls to directory assistance, thus eliminating expenses primarily because the company could decrease the number of operators.

The DPUC, in opposing this plan, presented the testimony of Dr. Marvin H. Kahn, a public utility consultant. Doctor Kahn testified that the costs to NET ratepayers for directory-assistance charging would outweigh the benefits of the plan, and he added that calls from hotels, motels, and hospitals should not be exempt. He further asserted that the directory-assistance plan would be more acceptable if the company would immediately lay off employees upon implementation of the plan so that the full impact of the savings could be realized in the first year. In its report and order the commission observed that Dr. Kahn did not dispute Ms. Cardinale's testimony that the directory-assistance-service tariff would place on the major cost-causer a larger proportion of the financial burden associated with the service.

The commission found insufficient record support for a fifty-cent charge for calls placed through an operator but did agree that a twenty-five-cent charge for informa-

tion inquiries was cost justified. As far as the hotel, motel, and hospital exemptions were concerned, the commission ruled that only the hospital exemption would be approved because hospital patients, like the functionally disabled, are particularly limited when it comes to use of telephone directories.

The company had estimated that its directory-assistance-charge plan would result in savings of $1.5 million during its first year of operation. Before the commission's order, directory-assistance costs were met with revenues collected in the flat monthly rate, a component of the exchange category. The Attorney General argues that because of the commission's action, residential and commercial subscribers, who are included within this category, will lose the benefit of unfettered recourse to directory assistance while gaining an almost insignificant benefit of a decrease in their basic rate of approximately ten cents a month because the expense savings were to be shared by all the subscribers to the various services provided by the company.

■ An examination of the record as it relates to the directory-assistance plan leaves little doubt that the commission's approval of this plan must be affirmed. We have already outlined in considerable detail the evidence presented to the commission by both the company and the DPUC's experts on the directory-assistance-plan issue. Surely the commission was not required to adopt Dr. Kahn's approach, and in approving the plan, it is quite evident that the commission chose to rely more heavily on the evidence presented by the company. Under the standard of review referred to earlier in this opinion, the commission's decision will not be disturbed.

■ We now turn to the Attorney General's contention that the commission erred in approving increases in charges for public and semipublic coin-operated or pay telephones. Specifically, he claims that such increases were not based on credible record evidence. His argument here closely

tracks his argument on the directory-assistance issue. The short answer to his displeasure with the increased rates is that they, like the information charge, are supported by competent evidence that justifies their adoption.

Regarding the local-pay-telephone increase from 10 to 15 cents, both the DPUC and the company presented evidence to the commission. For the company, Brian R. Lane, local services division manager, advocated increasing the charge for local calls made from public coin stations from 10 cents to 25 cents for the initial five-minute period and from 5 cents to 10 cents for each additional three-minute overtime period. According to Mr. Lane's calculations, the cost per message of a local coin-phone call amounted to 21.1 cents in 1981, the last four months of which made up, in part, the test year utilized in this case for estimating future revenue requirements. Predictably, Dr. Kahn, on behalf of the DPUC, offered contrary evidence. He calculated a cost of 14.1 cents for a local call from a public coin station. Additionally, Dr. Kahn recommended that the commission require the company to provide a study on coin-call-duration frequencies before ordering any increase in coin rates.

As far as the commission's finding that Dr. Kahn calculated a cost of 14.1 cents for a local call from a public coin station is concerned, appellant now complains that this figure was never sponsored by Dr. Kahn but was presented only to demonstrate a need for further adjustment in the company's cost methodology. The Attorney General, in making this assertion, obviously invites us to assume the role and prerogatives of the commission and ignore the admonition set forth in the *Interstate Navigation* case. His zeal is commendable, but we must reject the invitation.

It should be noted that the commission, in deciding whether to grant an increase in pay-phone rates, was faced with a rather anomalous situation. This is so because the necessity of granting such increases in nickel increments does not square well with the commission's cardinal policy of basing rates on cost. Basic practicality demands that the number 5 be a factor in any approved pay-phone cost.[1] Against this background the commission heard evidence from both sides on this issue and concluded that the best evidence supporting the cost of a local call for the initial five-minute period came from Dr. Kahn and his estimate of 14.1 cents. In subsequently approving the nickel increment in this rate, the commission specifically rejected the company's proposal of a 15-cent increase, and on this record we cannot say that the commission was unreasonable in reaching this result. Aside from the detailed evidence provided by the company and the DPUC concerning the cost per message, the commission was also informed that commissions in thirty-four jurisdictions in the United States have found it reasonable to raise local coin-operated-telephone charges above 10 cents. Here, the commission was free to pick and choose from the expert testimony presented by the adversaries.

■ Much of our prior comment can be applied to the commission's approval of an increase for semipublic telephone service.[2] Once again, evidence on both sides of the issue was presented to the commission. Mr. Lane proposed to replace the semipublic-coin-service rates of $13 per month and $0.53 guaranteed daily on rent-paid revenue by a flat monthly charge of $23. The DPUC concurred in the view that semipublic service rates should be established in a manner consistent with those for other business-exchange services. In fact, Dr.

---

1. Mr. Lane testified that increases in coin-operated telephones had to be by nickel increments because of technical design limitations. Because of the rounding difficulty, coin service has been exempt from increases in recent commission decisions.

2. An example of semipublic telephone service is a pay telephone located in a gasoline station where the station owner can receive incoming calls but outgoing calls can be made only by depositing the amount of the charge.

Kahn told the commission that the semi-public-coin-service rate should consist of two monthly charges, a station charge (equipment) of $8.50 and a service charge (service) of $23.40.

Consistent with its approbation of a local coin increase to $0.15, the commission approved the same nickel increase for semi-public telephones. More importantly, the commission agreed with Dr. Kahn that in addition to the monthly charge of $23, there should be a monthly station charge of $8.50. There is nothing in the record that would warrant our second-guessing the choice made by the commission.

■ In the spring of 1983 when hearings began on the application for the increases to which we have previously alluded, the commission had conducted extensive consolidated hearings on a variety of dockets, all of which related to the issue of the cost of a myriad of services offered by NET. In the due-process facet of his appeal, the Attorney General argues that there was an agreement to defer consideration of the directory-assistance charge and the increase in the cost of pay-telephone calls as well as the other areas of service until the commission had resolved the consolidated-docket issues. However, conspicuous by its absence from the record is any reference to a stipulation or written memorandum memorializing this agreement. For its part, the company claims that there was no agreement to defer consideration of the issues embraced within docket No. 1698 and presented to the commission in the spring of 1983. Rather, the agreement was to defer consideration of whether in the consolidated-docket matter the company's or the DPUC's comprehensive fully allocated cost study was the more appropriate cost analysis. That determination, although material to the resolutions embodied in the consolidated docket, did not invalidate the actions that are presently under review by this court.

As noted before, Dr. Kahn, on behalf of the DPUC, submitted extensive testimony on the directory-assistance and public and semipublic coin-box service, and he was cross-examined at length on these proposals. Ms. Cardinale's testimony concerning the directory-assistance plan was subject to cross-examination both by the Attorney General and counsel for the Rhode Island Consumers' Council. Mr. Lane, whose testimony focused on coin- and semipublic-telephone service and measured residential service, was also cross-examined by the Attorney General. On the basis of the record, we see no reason to dispute the position of the company that there was a general agreement among the commission, the company, and the DPUC that the items now being challenged would be presented and decided initially by the commission. Consequently, we are of the belief that the Attorney General's procedural-due-process argument has no support in the record.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the records certified to this court are ordered returned to the commission with our decision endorsed thereon.