**AUDUBON SOCIETY OF RHODE ISLAND et al.**

v.

**James J. MALACHOWSKI.**

**Nos. 88–534–M.P., 88–548–M.P.**

Supreme Court of Rhode Island.

Feb. 6, 1990.

Donald G. Elbert, Jr., Providence, S. Paul Ryan, Riverside, for plaintiff.

James E. O'Neil, Atty. Gen., Sheldon Whitehouse, Asst. Atty. Gen., Robert A. Ragosta, City of Cranston, Pawtucket, William F. Calise, City of Warwick, North Kingstown, Hugo L. Ricci, Ricci & Ricci, William J. McGair, Herbert F. DeSimone, DeSimone & Leach, Providence, for defendant.

Before FAY, C.J., and KELLEHER, WEISBERGER, MURRAY and SHEA, JJ.

## OPINION

SHEA, Justice.

These matters are before the Supreme Court on statutory cross-petitions for writs of certiorari filed by the Audubon Society and the League of Women Voters (petitioners) and by the Attorney General on behalf of the Division of Public Utilities to review a report and order of the Public Utilities Commission (PUC) in docket No.1900. We affirm.

The Providence Water Supply Board (PWSB) petitioned the PUC pursuant to G.L.1956 (1984 Reenactment) chapter 3 of title 39, for a general rate increase and tariffs that would produce slightly in excess of $5.4 million for water service to the metropolitan area. In its application the PWSB also requested a surcharge in the amount of $0.085 per hundred cubic feet of water to be used for the purpose of repaying to the city of Providence moneys advanced to the PWSB. The PWSB included in its proposal over $1.2 million in charges assessed by the city of Providence for various management and other services claimed to have been provided by the city.

After hearing, the PUC issued order No. 12796 in which it granted the rate increase.

The PUC, however, modified the amount requested by the city that could be chargeable for services rendered by the city of Providence to the PWSB through various departments of the municipal administration. The effect of this modification was a substantial reduction in the amount that could be reimbursed to the city from the surcharge.

The petitioners seek review of that portion of the report and order of the PUC that approved a surcharge requested by the PWSB. The Attorney General asks that we address the question of whether an affiliate relationship exists between the city of Providence and the PWSB.

■ The petitioners argue that the approved surcharge constitutes retroactive rate making and that it establishes an unjust, unreasonable, and discriminatory rate in violation of G.L.1956 (1984 Reenactment) § 39–1–1. We disagree. This court recently discussed the identical issue in *In re Woonsocket Water Department*, 538 A.2d 1011 (R.I.1988). In that case the PUC had approved a surcharge requested by the Woonsocket Water Department, the principal purpose of which was to repay a debt owed to the city of Woonsocket. We held that such a surcharge was an exception to the prohibition against retroactive rate making under § 39–3–11.1, which reads in part:

> "[T]he commission shall not have the power to suspend the taking effect of any change or changes in the rates, tolls, and charges filed and published in compliance with the requirements of §§ 39–3–10 and 39–3–11 by any public waterworks or water service owned or furnished by a city * * * when such change or changes are proposed to be made solely for the purpose of making payments or compensation to any city or town for reimbursement of any loans or advances of money previously issued to any said public waterworks or water service by any city or town under existing contracts or arrangements; provided, however, that such change or changes shall take effect subject to refund or credit pending further investigation."

We agree that the rule against retroactive rate making serves to protect the public by ensuring that present customers do not pay for past revenue losses in their current payments. We nevertheless held in *Woonsocket* that § 39–3–11.1 specifically provides for retroactive application when the surcharge is imposed to reimburse a city or town for loans or advances. The case before us is an identical situation.

The petitioners also argue that § 39–3–11.1 requires that surcharges such as those in question must be made subject to refund or credit that the PUC failed to order. On this later point petitioners are in error. The PUC specifically provided that the PWSB was allowed to maintain the surcharge for a full year subject to refund. At the end of the billing cycle the PUC would review the status of the debt and the collections by the PWSB and would make any refunds or adjustments required. *See* Division of Public Utilities and Carrier's motion for clarification and PUC's subsequent order dated December 12, 1988.

■ The petitioners also argue that the documentation of the city's service expenses were inadequate in that it consisted of only a two page letter that merely broke down the claimed costs into seven categories. Because this was insufficient, they claim, the PWSB did not meet its statutory burden of proof under § 39–3–12. In its report the PUC accepted the PWSB's contention that the contested city-services expenses were "based on actual costs incurred by the board as verified by the auditors." The PUC did express concern that those expenses have been growing disproportionately to the PWSB's budget, and it noted that it would require that an analysis of the city-services cost allocation be commissioned and filed at the PWSB's next rate request.

When this court examines a PUC ruling to determine whether it is lawful, reasonable and substantially supported by the evidence, we shall not engage in factfinding nor shall we weigh conflicting evidence presented to the commission. *New England Telephone & Telegraph Co. v. Public Utilities Commission*, 446 A.2d 1376, 1380

(R.I.1982); *see also* G.L.1956 (1984 Reenactment) § 39–5–4. After that limited review it does not appear that the PUC was in error in its ruling that allowed reimbursement for the city-services expenses.

 The Attorney General in his cross-petition for certiorari raises the question of affiliate status of the PWSB's relationship with the city of Providence and argues that a remand to the PUC for a determination of the question is necessary. The PUC did not address the question. As the Legislature and this court have acknowledged, special regulatory dangers exist in transactions between regulated utilities and unregulated affiliates. In such relationships, this court has recognized that the PUC has the right and the duty to scrutinize closely such transactions. *Town of New Shoreham v. Rhode Island Public Utilities Commission*, 464 A.2d 730, 736 (R.I.1983).

In our opinion, however, there is no need to remand this matter to the PUC for a determination of affiliate status. The PUC has previously warned the PWSB that "an arms length relationship must exist" between the city and the PWSB and that "such a relationship must be absolutely and scrupulously maintained." *Providence Water Supply Board*, docket No. 1513, p. 23 (1981). Also, the PWSB itself defines its relationship with the city as an affiliated corporation. In testimony before the PUC, an official from the PWSB stated:

> "The city is essentially one large corporation with an administrative staff or overview of the operating entities of the corporation. The Water Supply Board is an operating entity of the corporation."

We have previously set forth the standards of review employed by this court when reviewing a PUC decision. In *Roberts v. New England Telephone & Telegraph Co.*, 487 A.2d 136 (R.I.1985), we noted that the court will determine whether the commission's findings are lawful and reasonable, supported by legal evidence, and sufficiently specific to enable the court to ascertain if the evidence on which the commission based its findings reasonably supports the result. *See also Valley Gas Co. v. Burke*, 518 A.2d 1363 (R.I.1986).

We have also noted that in reviewing a PUC decision, the court will consider the fairness and reasonableness of the end result achieved by the commission, not the methodology by which the decision was reached. *South County Gas Co. v. Burke*, 486 A.2d 606 (R.I.1985).

After such a review we conclude that the cross-petitions for certiorari should be denied and the writs heretofore issued should be quashed. The order appealed from is affirmed, and the papers of the case are remanded to the Public Utilities Commission with our decision endorsed thereon.