## In re PROVIDENCE WATER SUPPLY BOARD'S APPLICATION TO CHANGE RATE SCHEDULES.

### No. 2007–378–M.P.

Supreme Court of Rhode Island.

Feb. 26, 2010.

Michael A. Calise, Asst. City Sol., for Plaintiff.

Leo J. Wold, Special Asst. Atty. Gen., for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

### OPINION

Justice GOLDBERG, for the Court.

This case is before the Supreme Court as a statutory petition for certiorari filed by the petitioner, the City of Providence (city), pursuant to G.L. 1956 § 39–5–1. The city is seeking review of a decision by the Rhode Island Public Utilities Commission (PUC) [1] denying a rate increase to the Providence Water Supply Board (PWSB or board) for reimbursement of sums paid for the PWSB's retirees' health-care coverage and benefits. The city seeks review of

1. The Attorney General represents the Division of Public Utilities and Carriers on behalf of the PUC.

the report and order that the PUC issued in Docket No. 3832. After careful review of the record in this case, we affirm the order of the PUC.

## Facts and Travel

Although this case began on March 30, 2007, when the PWSB made a general rate filing with the PUC, the events giving rise to the rate filing date to 1997, when the city began paying for a portion of the PWSB's retiree health-care costs. Inexplicably, these unreimbursed payments continued until 2005.[2] The 2007 rate filing, as requested, amounted to an overall revenue increase of $9,688,321 or 19.07 percent, and would have resulted in a rate increase for a typical resident in the city of approximately $41.60 or 17 percent. The 2007 rate filing was not solely based on the retirees' health-care costs; it was included in a general rate filing seeking an increase for several additional operational expenses.[3] The only issue before us, however, is the city's petition to review that portion of the PUC's decision denying the reimbursement for the retirees' health-care costs. It is important to note, however, that in its final report the PUC declared that this was the PWSB's fourth rate filing since 2000, but was the first time the city sought reimbursement for retiree health-care costs, notwithstanding that such payments commenced in 1997.[4]

The PWSB is an entity that is independent of city control; however, it uses the city's administrative services. According to the record, the PWSB typically prepares a payroll and sends it to the city's finance department, and the city charges the PWSB budget for allocations made on the PWSB's behalf. From 1997 through 2005, the city neglected to charge the PWSB for costs associated with the PWSB's retiree health care. Once this error was discovered, the PWSB sought to reimburse the city for past expenses that it had failed to pay because of the city's oversight.

Hearings on the PWSB's rate filing were held on June 19, 21, and 28, 2007 and September 12–13, 2007. The PUC also accepted prefiled testimonies from witnesses and experts representing the PWSB and other interested parties. The most pertinent testimony about the retirees' health-care costs came from Ms. Jeanne Bondarevskis (Bondarevskis), director of finance for the PWSB, and Mr. Thomas Catlin (Catlin), a consultant on revenue requirements for the Division of Public Utilities and Carriers.

Bondarevskis testified that the requested increase was intended to reimburse the city for the costs of retirees' health care, and she explained how these expenses were calculated. Specifically, Bondarevskis stated that the PWSB had not been reimbursing the city for the cost of its retirees' health care for several years and that this mistake was not discovered until fiscal year 2006. According to Bondarevskis, "[f]or some time now Providence Water has not reimbursed the [c]ity for

---

2. The record discloses that in 2006 the PWSB began paying for retirees' health-care expenditures by using existing rates.

3. Those costs included infrastructure replacement; increases in insurance costs; increases in chemical and sludge costs; increased costs associated with post-retirement health care benefits; the instant request to recover past retiree health care benefits paid by the City of Providence; increases in property taxes; an increase in operations revenue allowance; funding for strategic planning; increase in city service expense; wages and benefits; purchase power, and other known and measurable increases.

4. The board made a request for rate filing in 2000, 2002, 2005, and the current request in 2007.

[h]ealth care costs for employees in a direct manner," but Bondarevskis explained that when the payroll is complete, the city then wires the amount needed for payroll and fringe benefits.

The PUC explained in its order,

"In order to calculate the amount to be paid back, the City Controller's office started with actual costs for fiscal years 2005 and 2004, discounted the costs back for each fiscal year 2003 through 1997, based on the annual working rate [5] increase. In Ms. Bondarevskis' opinion, this was 'a reasonable method of estimating the outstanding liability.' "

In his testimony, Catlin stated that he would not oppose recovery of the retirees' health-care costs because the PWSB is not investor-owned. He noted that prior to the hearing, PWSB had requested a proposed settlement that would have reduced the amount sought to be recovered and the division proposed to expand the recovery period. However, despite this proposed resolution, the PUC delved further into how the PWSB derived the amount it sought to recover in the rate increase.

The hearing focused on the discrepancies arising from Bondarevskis's calculations for the proposed rate filing. The PUC questioned how the PWSB verified the amount charged by the city to the PWSB for active employees because her testimony indicated that there is no verification required for inactive or retired employees. The PUC was also concerned that the city did not track retiree costs and that it could not confirm the amount spent from 1997 through 2005 for retired PWSB employees. The PUC found that it was not until 2007 that "the [c]ity began tracking retirees separately from active employees for healthcare expenses," and it concluded that the expenses sought to be recovered, prior to 2004, "are based on estimates." The PUC noted that before 2004 the city had no figures accurately reflecting the amount it paid for PWSB retirees' health care, nor could the city's finance department recall whether, "when the actual claim experience was broken out and provided to the [c]ity, retirees were in a separate category from active employees[.]"

The PUC ultimately rejected the PWSB's request for reimbursement to the city for 1997 through 2005,[6] finding that the prohibition against retroactive rate-making barred the recovery sought in the case. According to the PUC, the payment

---

5. The working rate increase was described by Mr. Boyce Spinelli (Spinelli), the deputy general manager for the PWSB and former finance director for the city. In his testimony, Spinelli explained that the working rate is the amount set by an actuary to predict what the city will need to contribute annually to pay for all its employee's health plans, irrespective of the employee's status, whether retiree or active. This is so because the city is self-insured, and the working rate is a set-aside. However, if the actuary's estimate proves to be inadequate, then the city has a stop-loss insurance plan in place. The foregoing becomes important for this case because the city pays for every employee, irrespective of what department they are in—the PWSB is the *only* entity that pays its own share. In Mr. Spinel-

li's words, "[w]e are the anomaly, we are the only ones that pay our share * * *."

6. It is also of interest to this Court that the PUC included in its findings that the PWSB had numerous opportunities before its current rate filing to remedy this mistake had the city known about it. The board had applied for rate filings in at least three prior instances before 2007:

"Providence Water was not billed on an annual basis by the [c]ity, [it] appears to have been in the position where [it] should have been aware of the retiree health care obligation[s], and had multiple rate cases before the Commission during the time in question when it was apparently supposed to be paying these expenses."

sought would be retroactive ratemaking and that none of the exceptions to that prohibition would apply. Additionally, and determinative for our purposes, the PUC declared:

"Even if the Commission found that the prohibition against retroactive ratemaking should not apply, it is unclear what amount for retiree health care should be allowed. In order to calculate the amount to be paid back, according to Ms. Bondarevskis, the [c]ity [c]ontroller's office started with actual costs for fiscal years 2005 and 2004, discounted the costs back for each fiscal year 2003 through 1997, based on the annual working rate increase."

The PUC issued its written order on December 13, 2007, finding that the PWSB's "request to fund through future rates repayment of the City of Providence $1,489,081 over six years, or $248,180 annually for past retiree health care expense is denied." On December 18, 2007, the city petitioned this Court for review in accordance with § 39–5–1.[7] On January 17, 2008, the writ was issued, and thereafter this case was assigned to the Supreme Court's full briefing calendar. For the reasons set forth in this opinion, we affirm the order of the PUC denying the reimbursement for the retirees' health-care costs.

## Standard of Review

The General Assembly has established the standard of review for cases brought before us pursuant to title 39 of the General Laws, entitled "Public Utilities and Carriers." Specifically, the General Assembly has declared:

"The findings of the commission on questions of fact shall be held to be prima facie true, and as found by the commission and the [S]upreme [C]ourt, shall not exercise its independent judgment nor weigh conflicting evidence. An order or judgment of the commission made in the exercise of administrative discretion shall not be reversed unless the commission exceeded its authority or acted illegally, arbitrarily, or unreasonably." Section 39–5–3.

Additionally, we have expounded upon this standard of review in the context of regulatory proceedings, deeming it a limited standard of review. When reviewing such regulatory proceedings, our authority is limited to whether the PUC's findings are lawful and reasonable, supported by legal evidence and sufficiently specific to allow us to determine if the evidence before the PUC reasonably supports its decision. *See Providence Water Supply Board v. Public Utilities Commission*, 708 A.2d 537, 541 (R.I.1998); *see also* § 39–5–1. As we stated in *Providence Water Supply Board v. Malachowski*, 624 A.2d 305, 309 (R.I.1993):

"Even though we may reverse, affirm, or remand orders of the commission, we

7. General Laws 1956 § 39–5–1 provides for review by certiorari by our Court of all orders made by the PUC:

"Any person aggrieved by a decision or order of the commission may, within seven (7) days from the date of the decision or order, petition the [S]upreme [C]ourt for a writ of certiorari to review the legality and reasonableness of the decision or order. The petition for a writ of certiorari shall fully set forth the specific reasons for which it is claimed that the decision or order is unlawful or unreasonable. Chapter 35 of title 42 shall not be applicable to appeals from the commission. The procedure established by this chapter shall constitute the exclusive remedy for persons and companies aggrieved by any order or judgment of the commission; provided, however, any person aggrieved by a final decision or order of the administrator may appeal therefrom to the [S]uperior [C]ourt pursuant to the provisions of § 42–35–15."

afford 'great deference to decisions of the Public Utilities Commission in its rate-making regulatory capacity.' * * * We do so because the Legislature has mandated that we cannot reverse an order of the commission unless it exceeded its authority or acted illegally, arbitrarily, or unreasonably. Section 39–5–3. In our review, a party challenging a rate that the commission approves must overcome the presumption that the commission's conclusions are reasonable unless shown otherwise by clear and convincing evidence."

In applying this standard to the issues before us, we note that in seeking to overturn a finding of the PUC, the city has a difficult burden to overcome.

### Analysis

After a careful review of the record before us, we are satisfied that this case demonstrates a complete failure of proof by the PWSB and by the city as intervenor (and the real party in interest). We note at the outset, that the PUC found that an extrapolation of retiree health-care costs, based on a dubious mathematical formula, is insufficient proof of those costs as a matter of law. We reject the city's contention that the statute regulating ratemaking for public utilities provides for an extrapolation of costs.

The city argues to this Court that the prohibition against retroactive ratemaking does not apply to the rate filing at issue in this case because the debt incurred by the PWSB was a legitimate current obligation, and that the PUC acted arbitrarily when it denied the rate request. On the other hand, the PUC contends that these expenses, dating to 1997, are past expenses, not current costs. The PUC also argues that it acted correctly when it required the PWSB to prove its rate-filing request with accurate and verifiable evidence and; the

PUC contends that, when the PWSB failed to meet this burden of proof it was reasonable to deny the rate increase.

■ We begin this discussion by reiterating our well-established jurisprudence surrounding the prohibition against retroactive ratemaking. The central principle is that ratemaking must be prospective and, although subject to narrow exceptions, the PUC may not engage in retroactive ratemaking that results in future payments for past expenses. *See In re Island Hi–Speed Ferry, LLC*, 852 A.2d 524, 528 (R.I.2004). As we previously have declared:

"We have said in the past that the rule against retroactive ratemaking serves two functions. 'Initially, it protects the public by ensuring that present consumers will not be required to pay for past deficits of the company in their future payments. * * * The rule also prevents the company from employing future rates as a means of ensuring the investments of its stockholders.' *Narragansett Electric Co. v. Burke*, R.I., 415 A.2d 177, 178–79 (1980). In short, the prohibition against retroactive ratemaking is based upon the rationale that future rates may not be designed to recoup past losses." *Providence Gas Co. v. Burke*, 475 A.2d 193, 196 (R.I.1984).

■ This prohibition against retroactive ratemaking generally would prevent the rate increase in this case because public utilities are precluded from requiring current ratepayers to pay for the costs of past expenses. However, there are exceptions to the rule, most notably, that which is found in G.L. 1956 § 39–3–11.1(a):

"the commission shall not have the power to suspend the taking effect of any change or changes in the rates, tolls, and charges filed and published in compliance with the requirements of §§ 39–3–10 and 39–3–11 by any public water-

works or water service owned or furnished by a city, town, or any other municipal corporation defined as a public utility in § 39–1–2, when the change or changes are proposed to be made solely for the purpose of making payments or compensation to any city or town for *reimbursement of any loans or advances of money* previously issued to any public waterworks or water service by any city or town under *existing contracts or arrangements; * * *.* The public waterworks or water service shall file with the commission the new rate schedule along *with the documentary evidence of the indebtedness supporting the new rates.*" (Emphases added.)

Thus, in certain limited instances, § 39–3–11.1 exempts public utilities from the general rule against retroactive ratemaking. *See O'Neil v. Malachowski,* 604 A.2d 1268, 1269 (R.I.1992) (finding that this section exempts a publicly owned water authority or department from the ban on retroactive ratemaking because "the concern relating to privately owned companies does not apply to a publicly owned utility"). This statutory exception to the prohibition against retroactive ratemaking is sound policy because costs "that the water utility cannot recover from the users, the city provides through taxes, not voluntary investors." *In re Woonsocket Water Department,* 538 A.2d 1011, 1014–15 (R.I. 1988). The analysis, however, does not end there; it is not enough that the PWSB is a public utility seeking to compensate the city for reimbursements for loans or an advance of money. The city must demonstrate that the reimbursement it seeks is, in fact, repayment of a loan or an advance of money for the city under an existing contract or arrangement. Section 39–3–11.1. The city has failed to do so in the case before us.

The statutory exception requires that a rate increase must be proposed "solely for the purpose of making payments or compensation to any city or town for reimbursement of *any loans or advances of money* previously issued to any public waterworks or water service by any city or town under *existing contracts or arrangements.*" Section 39–3–11.1(a) (emphases added). Here, the PUC found that there was no evidence of a loan or advance of money under an existing contract or arrangement. The PUC found that no loan documentation existed in this case and, that the PWSB conceded that there was none. Furthermore, the PUC found that the PWSB "never claimed that this expense constituted repayment of a loan or advance."

We review § 39–3–11.1 in accordance with our long-standing rules of statutory construction. "When the language of a statute is clear and unambiguous, we must enforce the statute as written by giving the words of the statute their plain and ordinary meaning." *Gem Plumbing & Heating Co. v. Rossi,* 867 A.2d 796, 811 (R.I.2005) (quoting *Harvard Pilgrim Health Care of New England, Inc. v. Gelati,* 865 A.2d 1028, 1037 (R.I.2004)). Thus, in accordance with the plain meaning of the statute, whenever a municipality-owned water company is petitioning for a retroactive rate increase, as allowed by § 39–3–11.1, it must demonstrate to the PUC that there was an actual loan or advance to support the request; it must also demonstrate that the amount the petitioners seek to recoup is capable of proof by documentary evidence. Here, such proof is lacking. Indeed, the city suggested at oral argument that these payments were "like a loan with no paperwork." Clearly, the city failed to sustain its burden of producing documentary evidence establishing that the expenditures for

which it sought reimbursement through retroactive ratemaking were the result of existing contracts or other arrangements. We conclude that the city has not demonstrated that it meets the statutory exception found in § 39–3–11.1.

Furthermore, the PUC observed, and we agree, that there was an utter failure of proof about the amount sought to be recovered. The burden of proof necessary to support a general rate filing is set forth in § 39–3–12:

> "*At any hearing involving any proposed increase in any rate, toll, or charge, the burden of proof to show that the increase is necessary in order to obtain a reasonable compensation for the service rendered shall be upon the public utility; * * *.*" (Emphases added.)

Section 39–3–12 unequivocally provides that at "any hearing" requesting a rate increase, the public utility has the burden of proving that the increase is necessary. Therefore, it was incumbent upon the PWSB to demonstrate to the PUC that the general rate filing sought in this case was necessary "in order to obtain a reasonable compensation for the service rendered." *Id.* We previously have elaborated upon § 39–3–12 and the relationship between the PUC and the PWSB in *Audubon Society of Rhode Island v. Malachowski*, 569 A.2d 1 (R.I.1990). In that case, we affirmed an order by the PUC in which it granted an increase to the PWSB. *Id.* at 3. In reviewing the PUC's order, we concluded that a two-page document separating the claimed costs into seven discrete categories met the statutory threshold found in § 39–3–12 because the documentary proof permitted the PUC to find that the expenses were "based on actual costs incurred by the board as verified by the auditors." *Malachowski*, 569 A.2d at 2. In discussing the report at issue in *Malachowski*, we explained that the PUC's role

with regard to the utility's burden of proof, noting that, "special regulatory dangers exist in transactions between regulated utilities and unregulated affiliates." *Id.* at 3. We recognized that in examining these relationships "the PUC has the right and the duty to scrutinize closely such transactions." *Id.*

Applying that reasoning to the case at hand, the PUC carefully examined the proposed rate filing by the PWSB and the utility's relationship with the city and concluded that the board and the city failed to meet its burden of proof to support the rate filing. The PUC found that, in accordance with § 39–3–12, "the burden of proof is on the utility to present and prove its expense, but Providence Water objected and refused to provide the information. Therefore, Providence Water failed to prove its case."

In *In re Woonsocket Water Department*, 538 A.2d at 1014, this Court held that:

> "It is within the province of the commission to determine the type of information a utility must supply to set specific rates. * * * No particular formula binds the commission in formulating its rate decision; the sole requirement is that the ultimate rate be fair and reasonable. * * * The rate that the commission approves, furthermore, carries a presumption of reasonableness that remains until the contrary is proven."

█ The record before us indicates that the PUC's report and order was reasonable given that the PWSB had failed to provide the requisite proof of the actual amount for the retirees' health-care costs between 1997 and 2005. Neither the PUC nor this Court is required to accept an extrapolation in place of the actual and verifiable proof necessary to sustain a general rate filing; nor will this Court substitute its own judgment for that of the PUC

"unless the commission exceeded its authority or acted illegally, arbitrarily, or unreasonably." Section 39–5–3. Accordingly, we affirm the report and order of the PUC.

### Conclusion

For the reasons stated, we quash the writ and affirm the report and order of the Public Utilities Commission denying the Providence Water Supply Board's request for reimbursement to the petitioner, the City of Providence. The records certified to this Court are remanded to the Public Utilities Commission with our decision endorsed thereon.